*THE EXECUTORS of BRASHER *against* W. VAN
CORTLANDT, a lunatic, by W. & P. VAN CORT-
LANDT, his committee.

A creditor of a lunatic may file a bill for the payment of his debt, against
the committee of the lunatic, without making the lunatic himself a
party.

Where the lunatic was named as a party in the bill, with his committee,
and the *subpœna* issued in a cause entitled against the committee alone,
without naming them as a committee; and they entered their appear-
ance in the cause as so entitled, while the plaintiff proceeded in the
cause as entitled in the bill, and took the bill *pro confesso*, for want of
an answer, and went on to a final decree, it was held, that the commit-
tee were too late to object to the irregularity, after taking a copy of the
bill, and tacitly suffering the plaintiffs to go on to a decree.

The party who wishes to avail himself of an irregularity in the proceed-
ings of his adversary, must make the objection the first opportunity af-
ter he has knowledge of it, or has sufficient information to put him on
inquiry as to the fact.

Where a creditor wishes to obtain payment of his debt out of a lunatic's
estate, and no inventory of the estate has been filed by the committee
of the lunatic, according to the statute, the proper course is to cause
the committee, by citation or otherwise, to file the inventory, and to
present a *petition* to the Court, stating the amount of the estate,
debts, &c.

Where the real estate of a lunatic is ordered to be sold, the sale is to be
conducted by the committee, not by the master; but he, or some other
person, may be joined with the committee for that purpose, and to ex-
ecute the conveyance.

THE bill stated a debt due to the mother of the testator *November* 29th.
from the lunatic, who assigned it to the testator, &c.,
amounting to 509 dollars and 48 cents; that a commission
of lunacy issued against *W. V. C.* defendant, and he being
found a lunatic, his two sons were appointed a committee,
&c. That they neglected to file an inventory of the luna-
tic's estate, &c., pursuant to the directions of the statute;
that the plaintiffs do not know what is the amount of the
personal estate of the lunatic, but his real estate consisted
of a farm in *West Chester* county, of 400 acres, and more
than sufficient to pay all his debts, &c.

The bill prayed that the committee might be decreed to ·
file an inventory of the lunatic's estate, &c., according to
. the statute; and that if the personal estate should be found
*insufficient to pay the debts, that a sale might be directed of    [ *243 ]
so much of the lunatic's real estate as would be sufficient
to pay the debt due the testator, and the costs, &c.

On the 3d of *January*, 1816, the bill was taken *pro con-*

1816.

EXECUTORS
OF BRASHER
v.
VAN CORT-
LANDT.

*fesso* against the defendants; on the 21st of *June* an order of reference was made to a master to ascertain the amount of the real and personal estate of the lunatic, and of the debt, &c. The master made his report on the 13th of *September*, and the cause was set down for a hearing on the 30th of *September*. A decree was entered for the sale of so much of the real estate of the lunatic as would be sufficient to pay the debt, (the principal and interest of which the master reported to be 736 dollars and 24 cents,) and the costs.

A *petition* of the *committee* of the lunatic was now presented, praying that all the proceedings in the cause, subsequent to the filing of the bill, might be set aside for irregularity. The petition stated, that the bill prayed process of *subpœna* against the committee, as the committee and guardians of the lunatic, to appear and answer. A *subpœna* issued against the defendants without styling them a committee, &c., returnable on the 15th of *June*, 1815. On the 7th of *July*, an order was entered, that *W. R. Van Cortlandt*, one of the defendants, appear and answer in six weeks, or that the bill be taken *pro confesso* against him. That the defendants (the committee) caused their appearance to be entered on the 10th of *July*, 1815, in a cause of the plaintiffs *against* them, and gave notice of the appearance to the plaintiffs' solicitor. On the 15th of *November*, an order was entered by the plaintiffs, as of course, in the above entitled cause, that the defendant *P. Van Cortlandt* file his answer in six weeks, or that the bill be taken *pro confesso*, no copy of which order or notice thereof was served, and on the 3d of *January*, 1816, an order was entered that the bill should be taken *pro confesso*. All these orders were given on certificates of

[ * 244 ]

the *clerk, in a cause of the plaintiffs against the committee only, the two defendants, in their private capacity, without styling them a committee, &c.

The lunatic has never appeared, &c. Notice was received that the cause would be brought on to a hearing, on the 20th of *June*. On the 7th of *August* the solicitor of the defendants received a summons to attend before the master, and another summons on the 13th of *September;* and, on the 20th of *September*, he received notice of hearing for the 30th of *September*, but all these notices were in the cause entitled as in the bill, and not in the one in which the de fendants appeared.

The affidavit of the solicitor of the committee was read in support of the petition, stating, that he entered their appearance in a suit of the plaintiffs, *against them*, according to the subpœna, and that no notice, pleading, or paper, entitled in such cause, had been received by him.

The clerk certified that he delivered a copy of the bill to the solicitor of the defendants in *June*, 1815: that he issued the subpœna, but omitted the addition of the plaintiffs as executors, and of the defendants as committee, believing those additions unnecessary in the process; and such being his practice.

The solicitor of the plaintiffs stated, in an affidavit, that when he received the subpœna from the clerk, he objected that the additions were not mentioned, but the clerk said they were unnecessary, as they would always appear in the bill. That when he received notice of the appearance of the defendants, (the committee,) he did not inspect the title of the cause particularly, but supposed it to be according to the title in the bill, &c.; and that the plaintiffs have filed no other bill.

*Henry*, for the defendants, in support of the petition.

*Th. Sedgwick*, contra.

*THE CHANCELLOR. Several objections are taken on the part of the defendants to the regularity of the proceedings.

1. The lunatic himself is not made a party defendant.

The bill contains no prayer for process against the lunatic, and, therefore, he is not technically, and according to the established test, a party to the bill. (*Fawkes* v. *Pratt*, 1 *P. Wms.* 592. *Windsor* v. *Windsor*, *Dickens*, 707. 15 *Vesey*, 164.) The bill is against the committee, and seeks payment of a debt due from the lunatic; and the question arises, whether the lunatic ought to have been joined with his committee as a party defendant. If he had been joined, it would seem to be mere matter of form, and the committee would have been directed, as of course, to put in his answer, as his guardians. It would have been their answer, though in his name. If he be made a defendant, he is to answer by his committee. (*Dickens*, 233. 460.) When the committee are made defendants, there can be no use in joining the lunatic also, for the custody of the estate is no longer in him, but in this Court, under the administration of the committee. Though the books speak of the lunatic as a proper party, (*Lloyd's* case, *Dickens*, 460.) yet I do not perceive its necessity. The payment of the debts due from the lunatic is now usually sought, by a petition to the Court, as the funds are supposed to be under its entire control. Thus, in the case *ex parte M'Dougal*, (12 *Vesey*, 384.) the chancellor observed, that the universal course was, where a *petition* was presented for the payment of a debt due from the lunatic, to apply the fund in discharge of the debts; and, if there

195

*Margin notes:*

1816.

EXECUTORS OF BRASHER v. VAN CORTLANDT.

[ * 245 ]

A lunatic himself need not be made a party to a suit, by a creditor, against his committee, to obtain payment of a debt out of his estate.

1816.

EXECUTORS
OF BRASHER
v.
VAN CORT-
LANDT.

[ * 246 ]

be any reasonable doubt of the debt, it must first be made the subject of consideration at law. So, in the case *ex parte Hastings*, (14 *Vesey*, 182.) the petition was on the part of the committee, praying that the lunatic's debts might be paid out of a fund, in bank, to prevent the arrest of the lunatic at law; and Lord *Redesdale* said, *(2 *S. & Lefroy*, 439.) that the Court would, on application, order possession to be delivered, by the committee, to the undisputed heir of the lunatic, on his death, without putting him to his ejectment.

Until the statute of 43 *Geo.* III., there was no special authority given to the Court, or to the committee of the lunatic, in *England*, to sell or mortgage his real estate for the payment of his debts. The Court did not conceive it to be any part of its duty, or that it had the power. (2 *Vesey, jun.* 73. 74. 14 *Vesey*, 182. 8 *Vesey* 79.) The *English* cases are not, therefore, quite applicable on this point. The custody of the lunatic is committed, in *England*, not to the Court of Chancery, but to an individual selected by the crown, who is generally, though not always, the person who has the custody of the great seal. (3 *Atk.* 635. *Dickens,* 553.) But here the charge of the person and estate of the lunatic, and his maintenance, is expressly committed to the chancellor; (*N. R. Laws,* vol. 1. 147.) and the duty of providing for the payment of the debts is specially enjoined. For this purpose, the committee is to exhibit, under oath, within six months from his appointment, an inventory of the estate, debts, and credits of the lunatic; and when the personal estate shall be insufficient for the discharge of the debts, he is to present a petition to the chancellor, setting forth the particulars and amount of the estate and debts. If the personal estate shall appear to be insufficient, it is made the duty of the chancellor to cause so much of the real estate to be sold as shall be necessary for the discharge of the debts. These provisions render the payment of the debts out of the lunatic's estate no longer a matter of discretion, but of indispensable duty; and they contemplate the committee as being charged, (though, undoubtedly, under the control and direction of this Court,) with a trust to be performed for the benefit of creditors, and an agency in the payment of the debts and the administration of the estate. To what extent *these new duties of the committee may necessarily lead, I need not now examine, nor am I altogether prepared to say. The view of the subject under our statute is, certainly, greatly varied from that under the *English* law; and I entertain no doubt that the committee may be called upon in this Court by the creditors for the payment of their debts, without making the lunatic a party.

This question of necessary parties is always more or less

[ * 247 ]

a matter of discretion, depending on convenience. In this case, it would be quite absurd to bring in a party who has no capacity or power of action, except by the very persons already before the Court as his trustees, and when the Court is only to look to the certainty of the debt, and to the state of the assets, in order to provide for its payment.

2. Another objection is, that the appearance of the defendants in pursuance of the *subpœna* was in a suit of the plaintiffs against them individually, and not in their official capacity as committee; and that, as all the subsequent proceedings of the plaintiffs were against them as a committee, no notice was taken of them, as if the proceedings were not in the suit to which they had appeared.

I apprehend that the defendants are too late with this objection, whatever consideration might have been due to it, if it had been made on the return of the *subpœna*, and the entry of the appearance. There was no bill filed by the plaintiffs, but the one in the suit against the defendants, as committee, in which the existence and history of the debt against the lunatic, and of their neglect or refusal to pay it, after admission of its being due, is particularly set forth. A copy of this bill was taken by the solicitor for the defendants, before their appearance. If the *subpœna* was not properly filled up, according to the prayer in the bill, and they were not properly entitled by their addition, why was not the objection made in season? They were informed of the contents of the bill. I shall *consider the process and appearance as sufficiently applicable *to that bill,* and the defendants shall not now be permitted to deny it. It is not to be tolerated in this Court, which is governed by substance, and not by forms, that the party, after taking a copy of the bill on which the *subpœna* had issued, and in which he was properly entitled, and entering his appearance without his addition as committee, shall lie by silently, and suffer the complainant to go on, unsuspectingly, step by step, down to a final decree, on the ground of a valid appearance, and then start up with the objection that he had never appeared in that suit. I can only say, that such a course of practice will never answer any purpose here.

3. Another objection is, that the defendants having entered their appearance on the 18th of *July*, 1815, they were entitled to the service of a special rule to answer, before the bill could be taken against them *pro confesso.*

The rule for taking the bill *pro confesso*, without the service of any special order for that purpose, was entered on the 3d of *January* last. Since that time a general rule has been provided for the case of neglecting to answer *after* appearance; but the decision in *Caines* v. *Fisher*, (1 *Johns.*

*1816.*

EXECUTORS OF BRASHER v. VAN CORTLANDT.

A party who takes a copy of a bill filed against him as committee of a lunatic, and enters his appearance without his addition of committee,&c., cannot, afterwards, after suffering the plaintiff to go on to a final decree, object that the *subpœna* was against him individually, and not as committee, &c.

[ *248 ]
u

This Court looks to substance and not to form.

Before a bill can be taken *pro confesso*, a special order must be entered

*Ch. Rep.* 8.) had then been made, requiring such a special rule to be served, before the entry of the order to take the bill *pro confesso.* The entry of the order of the 3d of *January* was, therefore, irregular, and if the defendants had applied to set that order aside as soon as they had knowledge of it, and due opportunity to apply, they would have been heard. But it is admitted in the petition, that the defendants, by their solicitor, received notice on the 1st of *June* last, that the cause would be brought to a hearing on the 10th of that month, in order to obtain a reference. This was sufficient information to put them on inquiry, and it was decided evidence that their default had been entered. It is further admitted, that an order of reference was obtained on the 21st of *June,* *and that notice was received by their solicitor on the 7th of *August,* to appear before a master on the subject of the reference; that a further notice was received by him, on the 13th of *September,* to hear the report, and that on the 20th of *September* another notice was received, that the cause would be brought to a hearing on the master's report on the 30th of *September.* It is, lastly, admitted in the petition, that a final decree was entered on the 30th of *October,* and no reason whatever is given why the defendants have preserved silence until this time. If an irregularity in practice can be waived in any case, this must be that case; for the rule requiring a special order on the defendant, who has appeared to answer after the expiration of the first ordinary rule to that effect, was intended for his benefit, and is, in fact, an indulgence not granted to defendants who neglect to appear. There is good sense and justice in the practice in the Courts of law, that a defective notice or rule is deemed to be cured, and a default is deemed to be waived, by the neglect of the opposite party to complain of it, as soon as it comes to his knowledge. The reason of that practice applies to this case, in its full force. The defendants, with knowledge of the facts, suffer the plaintiffs to go on, unconscious of the mistake, and to accumulate labor and expense, until the cause arrives to the final decree, before they make any suggestion of the omission of the service of the second rule on them to answer. They do not even pretend that they have any merits or defence to make. If a person will be silent, when, in conscience, he ought to speak, it is equity that he be debarred from speaking when conscience requires him to be silent. The defendants, therefore, come too late with this objection.

4. The last objection is, that by an order of the 19th of *September* last, the master's report was to stand confirmed, unless cause was shown to the contrary in eight days, and

198

*yet that by an order of the 23d of *September*, being within the eight days, the cause was set down for hearing on the report, for the 30th of *September*.

The answer to this is, that the setting down the cause within the eight days, for a day subsequent to the expiration of them, was a preliminary measure, which did not prevent the defendants, if they had so been inclined, from showing cause against the report within the eight days, or afterwards, when the cause was to be brought on to a hearing on the report of the 30th of *September*. They never availed themselves of any opportunity of showing cause, either within the eight days, or afterwards at the term, but evidently and intentionally waived it. They have sustained no prejudice by this proceeding. They do not pretend to any. The report was not confirmed until the 30th of *October*. The objection applies only to a point of formal and regular practice; and if it was, in itself, well founded, the defendants have justly lost the benefit of it by not making it in season.

5. But there are objections to the form of the decree, as it now stands, which appear to me to be well founded.

The bill charges, and the master reports, and the defendants, by suffering the bill to be taken *pro confesso*, admit, that there is no personal estate of any consequence, it being insufficient to pay any material part of the debt. It would, however, have been more regular to have caused the defendants, by citation, or otherwise, to have filed their inventory as the statute enjoins, and to have stated, by petition, the particulars and amount of the estate and debts, to have enabled me to judge, in the first instance, of the situation of the estate. But, notwithstanding the defendants may have omitted their duty, yet I apprehend that the real estate can be sold, if the insufficiency of the personal estate is made out to my satisfaction, by the same proof, in substance, as it is, in this case, by the charge in the bill, *the order for taking it *pro confesso*, the report of the master, and the petition of the defendants.

The decretal order is, however, defective in this respect, that it directs the real estate to be sold by the master, whereas the statute evidently contemplates that the committee shall be a party to the sale and conveyance, after a report of the sale shall, previously to the execution of the deed, have been made and confirmed. A master, or other person, may, however, be joined with the committee in conducting the sale and executing the deed, and the time and manner are subject to my direction.

I shall, accordingly, set aside the decretal order of the 30th of *October* last, with liberty to the plaintiffs to set down the cause again for hearing at the next term, to the end that

1816.

EXECUTORS OF BRASHER v. VAN CORT-LANDT.

[ * 251 ]

1816.

DAVOUE
v.
FANNING.

the deficiencies in this decree may be supplied; but the defendants shall not be entitled to any costs of this application as against the plaintiffs; and I shall further direct, that the defendants file an inventory, as the statute directs, by the first day of the next term, or show cause to the contrary.

Order accordingly.