# N. Y. SUPERIOR COURT.

## ALBERT B. COREY, plaintiff, agt. WALTER P. LONG, defendant.

James M. Gano, a dentist of the city of New York, was appointed *receiver* in this action to take charge of the property and effects of the defendant, which consisted of spool silks and skein silks, which was formerly the property of the plaintiff and defendant as copartners, and which silks were in cases like wardrobes, and contained in a part of the second floor of the building 290 Broadway N. Y., 8 feet by 36 feet in size.

Under the order appointing the receiver he was authorized to sell the property at public or private sale, and upon a private sale thereof the receiver claimed to have received from all sources $8,123 04-100 and to have paid out $3,888 49-100. These expenditures included large payments for alleged services to deputy receivers, keepers, the plaintiff in the action, plaintiff's counsel and the receivers counsel. The proceedings were concluded within about three or four months.

On determining the only questions properly before the court, to wit; the extent of the powers of the receiver, the manner in which he discharged his duties, his charges therefor, the state of his accounts, the balance due by him and the relief to be granted to insure the payment of such balance; and on discussing and considering fully the powers and duties of receivers generally:

*Held*, that it was sufficient to say that upon his own showing, the receiver's conduct in this case had been reckless; that he had been unmindful of the solemn duty which he owed to the court that appointed him and to the interests of the parties and their creditors. His charges could not be indorsed as necessary expenditures in the proper execution of his trust, or under any order, or in the course and practice of the court. Their sanction would cast disgrace and reproach upon the administration of justice.

A receiver who steps outside the order appointing him, and assumes the role of an actor without the consent of or notice to the parties or the court, must be taught that the law will hold him to a strict account, and that the court, on the final passage of his accounts, will not ratify any expenditure unless the same has been necessarily incurred for the benefit of the estate.

*At Special Term, June, 1872.*

FREEDMAN, J.—This cause was brought on and submitted upon the pleadings, and all proceedings and orders heretofore had and made therein, for the final determination of such questions as remain undecided. From the papers thus

submitted, it appears that prior to the 7th day of December, 1869, Albert B. Corey and Walter P. Long, were partners under the firm name of Walter P. Long & Co. On December 7th, 1869, Corey sold to Long his (Corey's) interest in the partnership property and effects, and Long agreed to pay the existing debts of the partnership. On the 13th of January, 1870, Corey commenced his action in this court, for the purpose of restraining Long from interfering with the property of the firm of Walter P. Long & Co., and for the appointment of a receiver to take possession of the property and assets, convert them into money, and pay the debts of the partnership. At the commencement of the suit, an order was granted by a justice of this court, enjoining Long, in accordance with the demand of Corey's complaint, and a further order was made by the same justice, and entitled and entered as an order made by the court at special term, appointing James M. Gano as receiver of all the property and assets of the late firm of Walter P. Long & Co. On the 17th of January, 1870, and upon motion papers presented by Long, an order was made staying proceedings, under the first named two orders, and requiring Corey to show cause why they should not be vacated. This last order was, on the same day so far modified by the justice who had made the appointment of the receiver, as to allow the receiver and an officer of this court, Mr. Cosgrove, to take and hold possession of the property until the final order of the court. Upon the hearing of the motion at the special term, the order appointing the receiver was vacated, but the motion to dissolve the injunction denied. On the 31st of January, 1870, the court, at special term, upon a new motion, founded upon notice duly granted, an order appointing the said James M. Gano receiver, "of all the stock, fixtures, assets and property of whatever nature and kind soever, belonging to the firm of Walter P. Long & Co., with all the usual power and authority granted to receivers in such cases made and provided." Upon such appointment, the receiver filed a bond in the sum of $5,000.

On February 4th, 1870, an order was made by the justice who had originally granted the injunction and appointed the receiver, without notice to any of the parties to the cause, and wholly upon the *ex parte* application of the receiver, bearing date of that day, which, after the recitals contained therein, provides as follows :

" It is ordered, that the said James M. Gano, receiver of the firm of Walter P. Long & Company, be, and he is hereby authorized, empowered and directed to sell at public or private sale, all the personal property belonging to said firm of Walter P. Long & Company, now in the possession and charge of him, said Gano.

" And it is further ordered, that the said James M. Gano be authorized, empowered and directed to pay out of the proceeds of said sale or sales all the necessary charges and disbursements incurred by him in the keeping and preserving said property, and also all the necessary disbursements and charges that may be incurred in carrying out this order.

" And it is further ordered, that the said James M. Gano, safely invest the proceeds arising out of the sale of said property, after deducting the necessary charges and expenses, and hold the same until the further order of this court."

On February 23d, 1870, the defendant, Long, appealed to the general term from the orders of the special term, refusing to vacate the injunction and appointing a receiver. The general term reversed the said orders on the ground, that the plaintiff, Corey not having reserved a lien upon the partnership property, so as to require its application to the payment of the partnership debts, the defendant, Long had acquired an absolute title; that Long's mere personal covenant to pay such partnership debts, and to indemnify Corey against them, did not give Corey such a lien upon or interest in or equity against the property in dispute, as is necessary to exist for the maintenance of the action.

On the 22d of April, 1870, William McFarlane, a creditor of Corey & Long, commenced proceedings in the

Corey agt. Long.

district court of the United States for the southern district
of New York, against Corey & Long, to obtain an adjudica-
tion of bankruptcy against them, and on April 30th, 1870,
such an adjudication was made, and William P. Buckmaster
having been appointed assignee in bankruptcy the court in
bankruptcy, duly assigned to him all the property of the
bankrupts, and each of them, by assignment, dated May 25th
1870.

Thereupon, this court at the May special term of 1870,
granted and duly made an order, pusuant to a motion, made
on notice for that purpose, declaring the action abated, ex-
cept for the purpose of passing the accounts of the receiver
and of determining the amount of his fees, adjuding the said
William P. Buckmaster as such assignee entitled to the prop-
erty in controversy subject to such accounting, referring it to
a referee to pass the accounts of the receiver, and to ascertain
and report to the court the result of such accounting, and
substituting the said William P. Buckmaster as the sole party
to the action in the place and stead of the said Albert B.
Corey and Walter P. Long, for the sole purpose of such ac-
counting, and of prosecuting the said order and procuring a
delivery of the said property to him.

Before the referee the receiver filed an account showing,
that between February 5th, 1870, and March 28th, 1870, he
had received in all from the property of which he took pos-
session, $8,123 04-100 ; that he had paid to the assignee
$2,500, and that he claimed credit for other payments made on
account of expenses incurred, $3,888 49-100. The referee
found some of the amounts charged to be excessive, but
allowed a lage portion of the payments for which the receiver
claimed credit, and adjusted the balance due by the receiver
at $2,317, 40-100, and directed that sum to be paid to the
assignee in bankruptcy.

The assignee in bankruptcy and the receiver severally ex-
cepted to the referee's report. Upon these exceptions being
brought to a hearing on the 1st day of March, 1872, the

court made an order directing the referee to take and reduce to writing and certify to the court such further evidence touching the amounts actually paid by receiver to keepers or other persons employed by him in taking care of, or selling or disposing of said property, and as to the necessity of employing such keepers and assistants, and as to the reasonableness and propriety of the sums paid or allowed to such persons respectively, by such receiver, and also directing that the further hearing of this cause upon the referee's report already made, and the exceptions [thereto be laid over until the coming in of such further testimony, and that upon such coming in, either party might bring on the hearing on notice, and that upon such hearing any order made in this cause might be produced and referred to in the same manner and with the like effect, as if such order had been produced in evidence before such referee. Such further evidence has been and is now submitted.

Upon these matters and proceedings, I must hold, that the assignee in bankruptcy is not entitled to an adjudication, as claimed by him, (1st,) that the legal process under which the receiver took possession of the property in controversy, even if such property belonged to Cory & Long jointly, was in fraud of the bankrupt law, and was therefore, void as against the assignee; (2d), that, as the orders appointing Gano as receiver only authorized him to take possession of the partnership property of Cory & Long, and he, in point of fact, took property by virtue of his said appointment, which in judgment of law had become the property of Long individually, he was a trespasser from the beginning and is chargeable as such with the highest value of the goods and property taken by him, from the time of its taking to the end of the trial, without any deduction or allowance whatever for expenses or otherwise.

The order for his appointment clearly contemplated, that he should take possession of the identical property which be subsequently took, and if this court, in granting the said

order at special term, made a mistake as to the law applicable to the case as then presented, the receiver cannot be made to suffer for it.

Again, the assignee in bankruptcy cannot at this late day question the validity of the order made at the May special term of 1870, declaring the action abated, except for certain purposes therein specifically enumerated. If he felt aggrieved by it, he should have appealed. Not having done so, but having accepted the benefits conferred by the order and proceeded under it, he is bound by it.

The only questions, therefore, which are properly before me for determination, relate to the extent of the powers of the receiver, the manner in which he discharged his duties, his charges therefor, the state of his accounts, the balance due by him and the relief to be granted to insure the payment of such balance to the assignee. These question must be determined according to the well settled course and practice of courts of equity.

The appointment of receivers is a high power. It is never exercised if any other safe or expedient remedy can be used, and never where irreparable injustice might follow. Prior to the adoption of the Code, there was, as shown by Van Santvoord, in the admirable treatise on equity practice, no statutory provision which professed to define the powers of a court of equity in the appointment of receivers. But a long line of decisions and a uniform course of practice in the courts of chancery, both in this country and in England, had marked out the jurisdiction asserted by the courts in this respect and defined with tolerable accuracy the cases in which this extraordinary power would be exercised.

By section 244, the Code attempts, in a few general statutory provisions, to condense the whole body of the practice, both in law and equity, in this respect and to mark out the general rules governing the appointment of receivers. But these provisions are of so general a character that under another provision of the Code, which retains the old rules

and practice where they are not inconsistent with the Code, or have not been expressly abrogated, old principles may, and must still, be resorted to for the determination of particular questions.

The exercise of the power, therefore, must depend, as it always did, upon the sound discretion of the court in each particular case, in which it is made to appear as fit and reasonable, that some indifferent person should be appointed as receiver. But there is no case in which the court appoints a receiver merely because the measure can do no harm.

A receiver appointed by the court, is appointed not on behalf of the complainant or of the defendant only, but for the benefit of all parties who may establish rights in the cause ; and the money in his hands is in *custodia legis* for whoever can make out a title to it. The court itself has the care of the property in dispute ; the receiver is but its creature and, therefore, an officer of the court.

As a general rule, the receiver should be a person wholly disinterested in the subject matter of the suit ( *Bennett's Master*, 93) and should not interfere in any litigation between the parties ( *Comyn* agt. *Smith*, 1 *Hogan*, 81). This principle was formerly adhered to with such strictness that courts held that the receiver ought not to make any application to the court in the first instance ; that if he find himself in circumstances of difficulty, he should apply to the plaintiff to make the necessary application, and that only on plaintiff's refusal so to do, the receiver may properly apply ( *Parker* agt. *Dunn*, 8 *Beav.*, 497). And the practice thus laid down the courts enforced so rigorously that whenever a receiver brought forward a motion without having previously applied to the proper party to make it, it was refused, and the receiver, in some instances, ordered to pay the costs ( *In re Doolan*, 2 *Cow. & L.*, 232 ; *S. C., Dr. & War.*, 442 ; *Clark* agt. *Fisher, San. &. Sc.*, 684 ; *O'Connor* agt. *Malone*, 1 *Ir. Eq.*, 20 ; *Wrixson* agt. *Vize*, 5 *Ir. Eq.*, 276 ; *Richards* agt. *Goold*, 7 *Ir. Eq.*, 209).

It being the duty of a receiver to remain indifferent between the parties, and not to interfere in the litigation pending between them, it becomes his further duty to protect the property entrusted to him, to the best of his ability, for the interests of all parties to the suit, no matter how various and conflicting these interests may be, without allowing himself to be controlled by the representatives of any one of the parties (*Iddings* agt. *Bruin*, 4 *Sandf. Ch.*, 417), and consequently he will not be permitted, except upon the consent of all parties, to employ the counsel, solicitors or attorneys of either of the parties to the suit to assist him in the discharge of his duties. The attorneys, solicitors or counsel of the several parties, are bound in duty to their clients to watch the proceedings of the receiver, and to see that he faithfully discharges the duties of his trust (*Ryckman* agt. *Parkins*, 5 *Paige's Ch.*, 545).

Being the mere instrument or hand of the court, he has a right, at any time, to apply to the court for instructions as to his duties under the orders of the court (*Curtiss* agt. *Leavitt*, 1 *Abb.*, 274), and the court will advise and afford him all necessary and proper protection.

Thus, the possession of a receiver is not to be disturbed without leave of the court (*Brooks* agt. *Greathed*, 1 *Jac. & Walker.* 178), and even an action cannot be brought against him without such leave (*Angel* agt. *Smith*, 9 *Ves.*, 335). It is a contempt of court for a third person to attempt to deprive him of that possession by force or even by a suit or other proceedings, without the permission of the court by whom the receiver was appointed (9 *Ves.*, 359).

Where violence is threatened, a writ of assistance directed to the sheriff may, in some extreme cases, be obtained, or the court may attach the wrongdoer (*Fitzpatrick* agt. *Eyere*, 1 *Molloy*, 171).

And where a receiver has been dispossessed by an act of a third party not sanctioned by the court, an attachment may issue against such third party, and the latter may not only

·be punished for the contempt, but compelled to restore the 'property (*Noe* agt. *Gibson*, 7 *Paige*, 513).

Again, being the mere creature of the court, a receiver, ·unless appointed under a special statute for a special purpose, as, for instance, the statute directing proceedings against corporations (2 *R. S.*, 438), has no powers except such as are ·conferred upon him by the order for his appointment, and the course and practice of the court (*Verplank* agt. *Mercantile Ins. Co.*, 2 *Paige's Ch.*, 452).

The rules of the English court of chancery were formerly strict in not allowing a receiver to do many things, such for instance, as making leases, or even repairs without a previous approval of a master, and he was not permitted under any circumstances to lay out more than a very small sum at his discretion. The court even . exercised great caution in granting a reference to a master for the purpose of assertaining whether the proposed transaction was or was not for the benefit of the parties interested.

But, says Mr. Hoffman, our court would undoubtedly sanction, when performed, what it would have directed to be done; and it is the constant course for officers of this description to perform their duties without the previous approval of the court (*Hoffman's Master*, 156).

To this ascertion Mr. Edwards, in his admirable work, on receivers in equity, very properly replies that, " if this be so, he must get his power through the practice of the court, and we are inclined to doubt whether a receiver should step far out of his order without its authority. The point is not whether the court may possibly protect him when he has volunteered an act, but whether he ought to have done it without direction."

This, in my judgment, is not only the correct view, but the proposition thus laid down should be strictly adhered to. To command and retain public confidence, and respect in a country founded upon free republican institutions, like ours,

courts cannot afford to sanction loose practice in the management of estates in dispute.

What then is the course and practice of the courts in such matters ?  · It is prescribed by the 92d rule of the general rules of 1858, (the 93d of the revision of 1871), which is as follows :

"Every receiver of the property and effects of the debtor shall, unless restricted by the special order of the court, have general power and authority to sue for and collect all the debts, demands and rents belonging to such debtor, and to · compromise and settle such as are unsafe and of a doubtful character.    He may also sue in the name of a debtor where it is necessary or proper for him to do so ; and he may apply ·· for and obtain an order of course, that the tenants of any real estate belonging to the debtor, or of which he is entitled to · the rents and profits, attorn to such receiver and pay their rents to him.    He shall also be permitted to make leases from time to time, as may be necessary, for terms not exceeding one year.    And it shall be his duty, without any unreasonable delay, to convert all the personal estate and effects into money ; but he shall not sell any real estate of the debtor, without the special order of the court, until after judgment in the cause.    He is not to be allowed for the costs of any suit brought by him against an insolvent from whom he is unable to collect his costs, unless such suit is brought by order of the court, or by the consent of all persons interterested in the funds in his hands.    But he may, by leave of the court, sell such desperate debts and all other doubtful claims to personal property at public auction, giving at least ten days public notice of the time and place of such sale."

The examination thus far made has established beyond doubt, that the receiver in this case possessed no powers, except such as were conferred upon him by the orders of his appointment, the order of the 4th of February, authorizing him to sell, and the rule referred to.    These have been quoted in full, and any act done beyond them, he must

justify either by the consent of the parties in interest, the special order of the court obtained for the purpose, or the clear necessities of the case. It is true that the order of the 4th of February, 1870, is itself, open to criticism, for the reason, that it was made upon the *ex parte* application of the receiver, without notice to any of the parties, and not by the court, but by a judge out of court. But as no steps have ever been taken to have it set aside on motion, or reversed upon appeal therefrom, and the receiver has acted under it, the assignee in bankruptcy is too late to question it so far as it affords protection to the receiver for acts done under it in good faith. The irregular manner, however, in which it has been obtained, and the fact that the receiver has not seen fit to apply to the court for any instructions under it, as he might have done in case of doubt or difficulty, impose upon the court the duty of holding the receiver to a strict account of his stewardship under the same.

I now proceed to examine the manner in which the receiver executed the trust and his charges therefor. He claims to have received from all sources, $8,123 04, and to have paid out as necessary expenditures $3,888 49. These expenditures include large payments for alleged services to deputy receivers, keepers, the plaintiff in the action, plaintiff's counsel and the receiver's counsel.

Descending still further into particulars, it is found that the goods consisted of spool silks and skein silks, that the cases of goods were like wardrobes, and that all the property was contained in a part of the second floor of the building No. 290 Broadway, in the city of New York. The receiver claims to have superintended the whole business of the receivership, but at a later stage of his examination, he admits that he had also to attend to his own business, which was that of a dentist, and that he employed deputy receivers to act for him during his absence. One of these was George L. Simonson, a lawyer, who had his office in the same building in which the property was contained. According to the

receiver's statement, Simonson was employed at the rate of $15 per day, and under such arrangement, actually received $690. According to Simonson's version he was employed by the receiver to make an inventory under each of the two orders for the appointment of said receiver, that he was paid $150 for each of the said inventories, that he subsequently charged the receiver $250 retaining fee for his services as counsel in supervising the accounts and attending to the sales of the assets, and taking charge of all the moneys collected ; that he was afterwards paid the sum of $40 for disbursements, and that these were all the amounts he received. These sums amount in the aggregate to $590 or $100 less than the receiver swears he paid. Moreover, it appears, that each of the inventories consisted of only eleven lines, and that Simonson on the 12th day of May, 1870, was substituted as attorney for the plaintiff in the action.

As to the employment of the plaintiff, A. B. Corey, who had a three years' experience only in the business, the receiver testifies that he employed him at the rate of $20 per day, but not for any specified time, to sell the goods; that Mr. Corey was thus employed from January 31st, 1870, to March 17th, 1870, and received $920 for such services. This statement, if true, shows that Corey received the same pay for Sundays as for week-days during the period named. The assignee in bankruptcy, on the other hand, shows by disinterested witnesses, that the services of a competent man to take charge of and wind up the business, should not have exceeded $200 per month. It finally appears, that besides the plaintiff the receiver engaged the services of one J. A. Conklin as collector and assistant salesman, of one C. F. Merritt, "to sell goods, bring in customers, and mark goods;" of C. B. Corey, plaintiff's brother, "to mark and sell goods;" and of one Colton, "to sell goods on a commission."

As to the employment of deputy receivers, the receiver swears that he had two of them, and yet, in other parts of his examination he refers to Simonson, Ward, Early and

James Clark as deputy receivers, and shows payment to them as such. He also enumerates Ward, Early and Clark, as keepers in conjunction with Cosgriff, Griffin and Conklin, and shows payments to all of them as such keepers. The employment of this large force to stand guard over premises proven to be eight feet by thirty-six feet in size, the receiver accounts for by stating that in consequence of threats made by Long, he, the receiver, thought it necessary to have a good many keepers for fear that he might be put out of possession. But he cannot remember what Long said, and he never considered the threats, as made, of sufficient importance to report them to the court and to ask the court's instructions and protection. Not one of these keepers has been placed upon the witness stand, to prove the extent of services really performed.

Time and space will not permit me to enumerate in detail all the irregularities, inconsistencies and absurdities which appear to have been committed by the receiver. Suffice it to say that, upon his own showing, his conduct has been reckless and unmindful of the solemn duty which he owed to the court that appointed him, and to the interests of the parties and their creditors. His charges cannot be indorsed as necessary expenditure in the proper execution of his trust or under any order, or in the course and practice of the court. Their sanction would cast disgrace and reproach upon the administration of justice. I exceedingly regret the necessity for the use of such harsh language. But its employment on this occasion is imperatively called for by the evidence as well as by considerations of public policy touching the due administration of the law. A receiver who steps outside the order of his appointment, and assumes the role of an actor, without the consent of or notice to the parties or the court, must be taught that the law will hold him to a strict account, and that the court, on the final passage of his accounts, will not ratify any expenditure

unless the same has been necessarily incurred for the benefit of the estate.

With these remarks, I proceed to pass specifically upon the questions presented by the exceptions filed to the referee's report, and to determine the allowances to which the receiver is entitled. My conclusions are as follows :

*First.* The referee correctly held that the sum of $690 paid to G. L. Simonson, is not a proper charge against the moneys in the hands of the receiver. The duties performed by Simonson should have been performed by the receiver. The latter had no power to appoint a deputy to be paid out of the fund.

*Second.* The referee correctly held, that the amount of $920 paid to Albert B. Corey, the plaintiff, is excessive. But he erred in subsequently allowing $700 in place thereof. According to the theory upon which the action was instituted, it was plaintiff's own interest to have the goods realize as much as possible. He should for that reason have lent his efforts willingly without compensation to secure such a result. But under the decision of the general term above referred to, plaintiff never had a cause of action. He wrongfully managed, by a resort to the forms of law, to have a receiver appointed over the property of his late partner. In this way plaintiff eventually succeeded in throwing the entire affairs of the late copartnership into bankruptcy, and having succeeded in that, it would be an infringement of the rights of his late partner and of the creditors of the firm to award him an exorbitant compensation at their expense for services which it was his interest to perform, especially when it is borne in mind, as it always must be, that the receiver employed him without authority and without notice to the defendant. The item of $700 must be disallowed. In place thereof, the receiver may have a general allowance of $300 for the employment of a competent person to take charge of, and wind up the business.

*Third.* Having already demonstrated the want of the re-

ceiver's power to appoint a deputy to be paid out of the fund, the referee was right in disallowing the claim of $1,435 for keepers and deputy receivers. But the sum of $756 allowed for keepers at the rate of three dollars per day for each keeper for twenty-eight days, must be still further reduced. Considering the nature, quantity and quality of the property and the size and location of the premises, I can, upon the whole evidence, perceive of no necessity which rendered the employment of more than two proper and justifiable. Consequently, the sum of $168 is all that can be allowed on that account.

*Fourth.* As to the claim of $350 paid to Roger A. Pryor, counsel for the plaintiff, there seems to be sufficient evidence to sustain the finding of the referee that the said sum was paid over under an order made by a justice of this court. As no appeal has been entered from that order, nor any steps taken to have it set aside, that item is allowed.

*Fifth.* The allowance of $240 to James F. Morgan, for services as counsel to the receiver, cannot be approved, although in cases presenting difficult questions, a receiver, instead of taking up the time of the court with frequent applications for instructions, may and should apply to his own counsel, yet this should be done either with the sanction of the court or at the expense of the receiver. In the present case, no authority to employ counsel was asked for, or given, and no necessity for such employment appears from the evidence. Moreover, from the whole conduct of the receiver it is clearly apparent that the said counsel either did not advise the receiver as to his proper conduct, and therefore, earned nothing, or else gave erroneous advice which was of no value. For these reasons, the claim of $240 must be disallowed.

*Sixth.* The finding of the referee allowing $253 49-100 for rent, janitor, office-boy, postage and other incidental expenses has not been questioned.

*Seventh,* The allowance to the receiver of the sum of $406 15 for his fees may stand. But as his conduct has

rendered two references necessary, he must be charged with the sum of $227 50, which is one half of the expense thus occasioned.

*Eighth.* The exceptions filed by the receiver are overruled, and those of the assignee in bankruptcy are sustained as far as necessary to conform the report of the referee to the views and allowances herein laid down and made. The balance chargeable against the receiver after these corrections are made, together with interest thereon, the assignee in bankruptcy is entitled to have. To recover it, such assignee may have leave, (1*st*), to issue execution ; (2*d*), to apply for an attachment against the receiver in case of nonpayment, and (3*d*), to sue the sureties upon the bond given by the receiver.