(33 App. Div. 112.)

KENT v. WEST et al.

(Supreme Court, Appellate Division, Fourth Department. July 26, 1898.)

1. INSANE PERSONS—PERMISSION TO SUE—EFFECT.

Permission granted by the county court to bring an action against the committee of a lunatic in the supreme court is not a determination that petitioner has a cause of action.

2. SAME—CONTRACTS OF COMMITTEE—VALIDITY.

An action at common law cannot be maintained against the committee of a lunatic on a contract lacking the sanction of the court having jurisdiction of the accounts of the committee.

3. SAME.

The committee of a lunatic partner may not, in a contract jointly with the sane partner, charge the estate for services rendered to "each of them."

4. SAME—ATTORNEY'S FEES.

To recover for attorney's services rendered to the committee of a lunatic, resort should be had to the estate, either through a claim made on the property in the hands of the committee, or by a direct application to the court for an allowance to be paid out of the funds of the estate.

5. SAME—AUTHORITY TO SUE—PRESUMPTION.

Where it is not alleged that an action at law against the committee of a lunatic was authorized by the court granting leave to bring an action in the supreme court, such authority will not be presumed.

6. SAME—SUFFICIENCY OF COMPLAINT.

Where an action against the committee of a lunatic is authorized, the complaint should show that the services were rendered for the preservation or protection of the lunatic's estate, or that the court authorized the employment, or afterwards ratified it by an adjudication that the services were an equitable charge on the estate, and left the amount of the charge to be fixed by the jury.

7. SAME—LIABILITY OF ESTATE FOR BENEFITS.

The fact that services rendered were beneficial to the estate does not, per se, create any equitable right for compensation out of property in custodia legis, or give rise to an equitable cause of action against the committee of a lunatic, in his official capacity.

8. SAME—POWERS OF COMMITTEE—PARTNERSHIP.

Neither a sane partner, nor the committee of a lunatic partner, nor both combined, have any power, without authority of court, to continue the business of a partnership.

9. ACTIONS—MISJOINDER OF CAUSES.

The joinder of a cause of action against a partnership with one against one of the partners individually is improper.

10. APPEAL—REVIEW—PRESUMPTIONS.

The presumption that the lower court lawfully acquired jurisdiction will be indulged on appeal, when such jurisdiction is not challenged.

Appeal from special term, Onondaga county.

Action by Charles S. Kent against Isaac S. West, as committee of the person and property of Asa K. West, impleaded with Asa K. West and George F. West. From an interlocutory judgment sus-

taining a demurrer interposed by the committee to the complaint, plaintiff appeals.     Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Charles S. Kent, in pro. per.

William S. Jenney, for respondent.

GREEN, J.     The plaintiff's causes of action are based on this state of facts:     The defendants George F. and Asa K. West were engaged in business as co-partners under the firm name of West Bros.     "That, as such co-partners, they had conducted the business of shoe dealers, as well as to engage in the buying, in their firm and individual names, large amounts of real and personal property, and likewise to purchase interests in syndicates."     In December, 1891, Asa was adjudged a lunatic by a probate court in Massachusetts, and the defendant Isaac S. West was appointed guardian of his person.     In July, 1893, said Isaac was appointed a committee of the person and property of said lunatic by the Erie county court, in this state.     The lunatic is or was the owner of the undivided one-half of divers parcels of real estate, and of a large amount of personal property, situate within this state and elsewhere, in the aggregate value of $250,000.     The first count of the complaint alleges that between the 1st day of July, 1893, and January, 1895, the plaintiff performed professional services as a counselor at law, and also rendered other services, at the request of the defendants, for them and each of them, and for the said co-partnership, amounting in value to the sum of $10,000, and the defendants George F. West and the firm of West Bros., and the said Isaac S. West, as committee aforesaid, promised to pay the value thereof.     The second count alleges that between the 1st day of July, 1893, and January, 1895, at the request of said defendants, for them and each of them, and for the said firm of West Bros., the plaintiff performed professional and other services upon, about, and concerning the real and personal estate above mentioned, and then sets forth an itemized account of part of such services, containing numerous items; that in the month of May, 1894, the plaintiff entered into an agreement with the defendants, and each of them, and they accepted and ratified the same, and agreed to pay him as therein specified, which agreement was partly oral and partly in writing.     The written agreement set forth purports to have been made by and between the plaintiff and George F. West and West Bros., but it is not alleged that the committee ever signed or executed it.     By this instrument, in consideration of the services theretofore performed and to be performed in all matters pertaining to the business of West Bros. and George F. West, for a period of one year from January 1, 1894, the latter agreed to convey to Kent all property, of every name and nature, over and above property amounting in value to $90,000,—said sum to be in equities, shoe stock, or money, or both,—and over and above all debts existing January 1, 1894, or thereafter necessarily incurred in the shoe business with the consent of Kent.     Kent was to have the management of all property, of every name and nature, outside of the shoe business, and was to be consulted in regard to its management.     "All matters per-

taining to the business shall be done in a manner satisfactory to Isaac S. West, of New Orleans." There are other provisions in this remarkable agreement for the disposition of the lunatic's property interests, but they are not necessary to be stated. The complaint further alleges that George F. West and Isaac S. West, as committee aforesaid, treat all said property, both real and personal, as their own, by selling whatever portion of the same they desire without any order of the court, and using the proceeds in purchasing other property without authority of law; that said committee has never filed any inventory or account of the lunatic's property, although more than three years have elapsed since the appointment. Plaintiff claims that he is entitled to an adjustment and settlement of his rights under the contract, and to the share belonging to him, etc. Judgment is demanded for $20,000 damages, or for a specific performance of the contract, or for such other relief as may be deemed just. Upon petition of the plaintiff, the Erie county court granted an order permitting him to bring an action against the committee in the supreme court for the purpose of establishing and adjusting the claims and accounts mentioned in the petition, and the amount due thereon, if anything, to the petitioner, and also to compel the committee to file a true inventory and account of the estate. This order was evidently granted without any notice to the committee, for there is no recital of notice or appearance contained in it. The committee demurs to both counts on the ground that the facts alleged are insufficient to constitute a cause of action, and that causes of action are improperly united in the second count.

Permission to sue is not a determination that the petitioner has a good cause of action against the committee. The court, in granting leave to sue, is not called upon to, and does not, pass upon the question of the committee's liability. In all such cases the leave to bring suit reserves the right to the committee to set up any defense it may have, which may be done either by answer or demurrer. Fleischauer v. Dittenhoefer, 49 N. Y. Super. Ct. 311; Davis v. Duncan, 19 Fed.478.

The jurisdiction of the county court extends to the custody of the person and the care of the property, concurrently with the supreme court, of a resident of the county who is incompetent to manage his affairs, by reason of lunacy, etc. Code Civ. Proc. § 340, subd. 4. And, where that court first acquires jurisdiction, it is exclusive of that of the supreme court "with respect to any matter within its jurisdiction, for which provision is made in this title." Id. § 2320. The court must preserve the property of the lunatic from waste or destruction, and out of the proceeds thereof must provide for the payment of his debts, etc. Id. § 2321. This jurisdiction and power must be exercised by means of a committee (Id. § 2322), who is subject to direction and control of the court by which he was appointed, with respect to the execution of his duties. But a committee of the property cannot alien, mortgage, or otherwise dispose of real property, except to lease it for a term not exceeding five years, without the special direction of the court, obtained upon proceedings taken for that purpose. Id. § 2339. A committee is an officer of the court, to do what the court cannot do,—to take charge of the lunatic's

estate. He must account for the property committed to his charge. By section 2341 he is required to file an inventory and account in the month of January in each year. And in the month of February in each year the court must examine all accounts and inventories filed by the committee since the 1st day of February of the preceding year. Id. § 2342. A trust is, no doubt, discharged by the committee of the estate of a lunatic; but the trust is in the court, and the committee acts under its appointment, as agent, officer, or bailiff. Through him the court must preserve the property intrusted to it, and therewith maintain the lunatic and his family. But the lunatic is not devested of his estate or property rights, and the legal title thereto remains as before. Nothing has been taken from him, but its control and management. People v. Tax Com'rs, 100 N. Y. 215, 3 N. E. 85. The committee takes no title to the real or personal estate of a lunatic. He is a mere bailiff to take charge of the property, and to administer it subject to the direction of the court. His possession is the possession of the court. In re Otis, 101 N. Y. 580, 5 N. E. 571; Pharis v. Gere, 110 N. Y. 336, 347, 18 N. E. 135. The court, as incident to its jurisdiction in lunacy, administers the estate of an adjudged lunatic for the protection of creditors, and will apply it to the payment of his debts, the expenses of support and maintenance of the lunatic and his family, and the satisfaction of all obligations, charges, and expenses which legally or equitably ought to be satisfied out of his property; and this relief may be granted on the petition of the claimant. This jurisdiction, in its origin, was equitable, and is exercised upon equitable principles, and in accordance with the maxim that "equality is equity." In re Otis, supra; Carter v. Beckwith, 128 N. Y. 312, 316, 28 N. E. 582. The power of the committee to deal with the estate was, at common law, very limited. It was restricted to the preservation of the estate, and to the application of the rents and income to the proper support and maintenance of the lunatic,—to the exclusion even of creditors, if necessary. As a general rule, the committee cannot enter into any transaction respecting the property of the lunatic without the authority of the court. "It may be laid down as a general rule," says Shelford, "that all deeds, contracts, and transactions, by the committee of the estate of a lunatic, respecting the management or disposition of his property, which are not necessarily incident to the situation of a committee, or authorized by the express provisions of an act of parliament, will not bind the lunatic or his estate, unless the previous order of the lord chancellor has been obtained, and that, with a view to the security of a committee, it is not a prudent or safe course for him to enter into any contracts, or to adopt any proceedings out of the usual course, respecting the property or the rights of the lunatic, without the sanction of the lord chancellor." Shelf. Lun. 179. A receiver (and therefore a committee) cannot, of his own motion, contract debts chargeable upon the funds or estate in his custody. The court must authorize expenditures on account of the property before they can be charged thereon; and while it may, and does, in its discretion, allow expenses incurred by a receiver strictly for preservation to be charged upon the estate, although incurred without the prior sanction of the

court, it is nevertheless the order of the court, and not the act of the receiver, which creates the charge, and upon which its validity depends. Vilas v. Page, 106 N. Y. 439, 451, 13 N. E. 743. A guardian has no authority to bind either the person or estate of his ward by contract. He may do so under the direction of the court, but he does not exercise in such cases a power belonging to his office, but an extraordinary power, conferred for a special purpose. Woerner, Guardianship, §§ 57, 59, 142; Reading v. Wilson, 38 N. J. Eq. 446. It necessarily follows, therefore, that an action at law cannot be maintained against the guardian or committee, in his official capacity, upon the contract made. See Rogers v. Wendell, 54 Hun, 540, 7 N. Y. Supp. 781, and 8 N. Y. Supp. 515. In the case of claims founded upon contracts made with the committee respecting the person or estate of the lunatic, they should be heard and decided by the court having jurisdiction of the accounts of the committee. If the interest of the estate of the lunatic requires the employment of an agent or clerk, the court, upon the application of the committee, will allow him to employ such agent or clerk, and to pay him a reasonable compensation for his services out of the income of the estate. Ex parte Livingston, 9 Paige, 440.

With this brief statement of the duties and powers of the committee of a lunatic, the nature of the office itself, and the relations of the committee to the court appointing him, we will proceed to a more particular consideration of the case before us:

That the first count of the complaint is wholly insufficient to constitute a cause of action against the committee, founded upon a joint undertaking by the committee and the sane co-partner to pay the value of services rendered for them, and for each of them, and for the co-partnership, is too clear to require argument or discussion to establish the proposition. A verdict rendered for the plaintiff and against these defendants jointly, and the judgment entered thereupon, would result in imposing upon the lunatic's estate an obligation to satisfy the whole amount of the judgment, and thus the estate would be charged with the payment of services rendered to a third party. This the court has no power to authorize or to sanction. The committee of an insane partner has no independent power or authority to join with the sane partner in incurring a joint legal liability, or in imposing upon the lunatic's estate a legal obligation or charge, in matters connected with or concerning the transactions of the co-partnership business or property. Nor, of course, may he charge the estate for services rendered to "each of them." The jurisdiction or power to determine the necessity or propriety of charges or expenses incurred in the preservation or protection of the lunatic's interest or estate is of an equitable character, and is to be based upon equitable principles; and the court having the care and custody of the estate is not authorized to abdicate its power, or surrender its function to the caprice of a jury. There would be gross impropriety in leaving it to that tribunal to determine the necessity of the charge, and to fix the amount. We do not see upon what principle a common-law action may be maintained against a committee to recover a judgment upon a debt incurred by him. Such an action must be founded upon a

promise, express or implied, or some legal liability to pay, but the committee has no power to create a legal charge or obligation upon the estate. The action results in a judgment, merely, payment of which is to be enforced by issuing an execution, and seizing and selling property; but this mode of satisfying a demand against a person or estate thus situated cannot be resorted to. The action at law, even if it can be maintained, therefore, against the committee, for the purpose of obtaining a judgment, is worse than useless, and ought not to be encouraged. The proceeding by bill in equity would seem more appropriate, because the court having the care and custody of the estate could decree its payment in whole or in distributive proportions, according to the principles of equity, and direct its officer, the committee, to pay from the estate accordingly. It is more analogous to a proceeding by petition, where the court directs or refuses payment by order instead of a decree. The objection to an action in the nature of a suit in equity is its unnecessary expense. But a proceeding by action, where a judgment only is demanded, is not at all adapted to a case where the debtor and the property sought to be reached are both in the care and custody of the court. Such an action cannot be maintained, and ought not to be tolerated. The proceeding by petition is simple, expeditious, and comparatively inexpensive, and should always be adopted, unless it is shown that a trial is necessary to settle some disputed question or right, which cannot be properly determined and adjusted on a reference, to ascertain the amount that should be allowed, in a proceeding by petition. Hall v. Taylor, 8 How. Prac. 428. In most cases of claims against a committee, or the fund or property in his hands, the remedy by special motion is adequate. Any person having such a claim may resort to this summary remedy. The fund or property being held by the court, by its committee, in trust for those entitled to it, or to be paid out of it, the court may administer justice to claimants without suit, upon special application. In the present case all the relief sought, to which the plaintiff is entitled, might be obtained in that mode, and that mode is commended by considerations of economy as well as expedition. De Groot v. Jay, 30 Barb. 484. A court of equity has little need to call in the aid of a jury to fix the compensation of an attorney for professional services. The court, from practical knowledge of professional work, is able to say in every particular case what ought to be a reasonable compensation. Daly v. Maitland, 88 Pa. St. 384. The county court was certainly competent to fix the value of those services. In no event could a jury render him any assistance, or enlighten his judgment. The allowance of counsel fees touching a fund in equity has always been under control of the chancellor, in his sound discretion, according to his estimate of what they reasonably deserve to have. McKelvy's Appeal, 108 Pa. St. 615. In Re Hardy, 26 App. Div. 164, 49 N. Y. Supp. 953, leave was granted to an attorney to sue the committee for services rendered the lunatic prior to the adjudication of lunacy, but no question was raised as to the propriety of granting the permission. In Re Horton's Estate, 18 Misc. Rep. 406, 42 N. Y. Supp. 775, it is stated, upon authority, that the preference will be given to a reference, over an action, to

determine the equitable claim of an attorney employed by the committee. An action at law to recover for services rendered to the committee should not be allowed, but resort should be had to the estate, either through an account, and a claim duly made upon the property in the hands of the committee, or by direct application to the court for an allowance, to be paid out of the funds or estate. Besides, it is not alleged that an action at law was authorized by the order, and it will not be presumed. On the contrary, it appears from the order printed in the appeal book, though not embodied in the complaint, or made a part of it, that only an equitable action was authorized. And, even though permission to bring a common-law action had been granted, the allegations would be insufficient, for the reason that there is no averment that the services were rendered for the preservation or protection of the lunatic's estate, or even that they were beneficial to it, or that the court authorized the employment, or afterwards ratified it, by an adjudication that the services were an equitable charge upon the estate, and leaving the amount of the allowance to be fixed by the jury.

Now as to the second cause of action alleged in the complaint:

By order of the county court, the plaintiff is authorized to bring an action in equity in this court for the purpose of establishing and adjusting the claims and accounts mentioned in his petition, and to have determined the amount due thereon, if anything, and also to compel the committee to file a true inventory and account. And now the plaintiff comes into a court of equity, and prays for a decree ratifying and confirming his dealings and transactions with the committee in respect of the management, control, and disposition of the property confided to the care and custody of the court, with knowledge that the acts of the committee were unauthorized, and in violation of the trust conferred or imposed upon him. If the court having charge of the property of the lunatic would be bound, upon established principles of equity and the adjudications, to refuse to sanction and give validity to the contract made with the committee, upon the petition of the claimant, the court in which the action is brought must be governed by the same rules, and act upon the same principles, and deny the relief demanded. No advantage can be obtained by bringing a suit in equity in the supreme court, instead of proceeding in the usual and proper course, by petition. The court therefore is empowered to determine whether, upon equitable principles, the plaintiff is entitled to an equitable lien or charge against the estate of the lunatic on account of the professional and other services rendered upon his employment by the committee without any authority of law, and in reckless disregard of the solemn duty which he owed to the court that appointed him. It is true, the complaint alleges that the defendants have in their hands funds and property of West Bros., and of each of them individually, which are the fruit and result of, and obtained by, the plaintiff's services, and retain possession thereof, and refuse to deliver the same to him in accordance with said contract. But the fact that the services were beneficial to the estate does not, per se, create any equitable right of compensation out of the property in custodia legis, or give rise to an equitable cause

of action against the committee in his official capacity, as an executive officer of the court. The plaintiff must claim through the committee, and whether any allowance should be made depends upon the approval by the court of the unauthorized acts of the officer. An attorney who accepts employment from a receiver, and whose every act must be with full knowledge that he is acting for an officer of the court, must be held to accept such employment with the understanding that his compensation will depend upon the amount that may be allowed him therefor by the court. Walsh v. Raymond, 58 Conn. 251, 20 Atl. 464. If a receiver has acted in good faith, and under such circumstances as enable the court to see that, if previous authority had been applied for, it would have been granted, a court of equity will, in the absence of anything showing the inexpediency and injustice of so doing, ratify and adopt the act done, as if it had been previously authorized. The justice and right of the matter must depend, to a great extent, upon the special circumstances of each case that may be presented. Due regard must always be had, not only to the nature and surroundings of the property, but to the exigencies of the moment when he may have been required to take action involving the safety of the property in his charge. Brown v. Hazelhurst, 54 Md. 28. And see Murphy v. Walker, 131 Mass. 341. But a receiver who steps outside the order of his appointment, and assumes the role of an actor, must be taught that the law will hold him to strict account, and that the court, on the final passage of his accounts, will not ratify any expenditure unless the same has been necessarily incurred for the benefit of the estate. Corey v. Long, 43 How. Prac. 492. All these expenditures and obligations or liabilities incurred by the committee ought to be carefully supervised by the court; and, considering the helpless condition of the lunatic, none ought to be allowed except such as are manifestly just and moderate.

Now, it is inconceivable that any court would authorize or sanction the making of this most unusual and extraordinary contract by the committee, upon which the second cause of action is founded. No argument is required to establish this. The inherent character of the contract condemns it. Nor, do we conceive, is the plaintiff entitled to any relief in this action, independent of the express contract alleged, in view of the nature and form of the complaint, and the facts and circumstances therein set forth. He is not entitled to receive, and does not deserve, much consideration, in view of his dealings with an executive officer of the court, who has undertaken to usurp its powers, and assume to exercise unwarranted authority. It seems that the committee was a nonresident, and it is inferable from the complaint that the management of the property and affairs of the lunatic was intrusted, to some extent, to the tender mercies of the sane partner and the plaintiff, who, it appears, acted in the capacity of agent and attorney for both parties, individually and collectively. This, of course, the committee had no authority to do. It is unnecessary to determine whether an adjudication of lunacy, of itself, terminates the partnership, or is only good cause for a decree of dissolution. See Story, Partn. § 295; T. Pars. Partn. 464–466; 1 Lindl. Partn. 213; 2 Lindl. Partn. 577; 1 Bates, Partn. § 581; Davis v. Lane,

10 N. H. 161; Griswold v. Waddington, 15 Johns. 82; Isler v. Baker, 6 Humph. 85; Raymond v. Vaughn, 128 Ill. 256, 21 N. E. 566. Certainly the power of the sane partner to bind the interest of the lunatic, if it exists at all, must, in the very nature of the case, be of a very restricted character. The power of an agent acting under a power of attorney is suspended by the insanity of his principal; and, where the fact is known to the agent and to the party dealing with him, the agreement is not binding upon the principal. Merritt v. Merritt, 27 App. Div. 208, 50 N. Y. Supp. 604. Clear it is that neither the sane partner, nor the committee, nor both combined, possessed any implied authority to make the contract alleged. The committee had no authority to continue the business without the authority of the court. It was his duty to apply to the court for directions concerning the line of conduct which he should follow in his efforts to preserve the estate,—whether to continue the business for a limited period, or to bring an action for immediate dissolution of the co-partnership and a settlement of its affairs. A committee may ask the court for instructions concerning the scope of his power to deal with the estate in his hands, or, in case the existence of the power is clear, but discretionary, to seek instruction as to the wisdom of exercising it in a particular method. Cooper v. Wallace, 55 N. J. Eq. 192, 36 Atl. 575. In Michael v. Locke, 80 Mo. 548, it was decided that a guardian of an insane person has no authority to continue a manufacturing business carried on by the lunatic, and to charge the estate with the price of goods purchased, even though it was considered necessary, to prevent a sacrifice of the property, and the estate derived an actual benefit therefrom, and the business afforded an income for the maintenance of the lunatic and his family. The case arose on demurrer to a bill in equity, and the court held, notwithstanding the strong averments in the bill, that it was "wanting in equity." The opinion of the court is pertinent to this case, and fully meets the plaintiff's contention:

"When he employs the assets of the beneficiary in trade or speculation, or in the establishment or continuance of a manufacturing business, as was done in this case, he does it in violation of the trust by which he holds them. The guardian continued the manufacturing business of Locke for the purpose of affording a better income to his beneficiary and the fam'ly. It is also alleged that it was necessary, to save and preserve the assets from sacrifice; in other words, it was necessary to commit a breach of trust in order to preserve the trust property. Equity cannot recognize the necessity of the situation, to confer such an extraordinary power. Something more than is stated in this petition is required, to make apparent the propriety of subjecting the assets to the hazard of a manufacturing business in order to save them from possible loss or depreciation. To approve and enforce against the trust estate a debt incurred by the trustee in open violation of the trust, merely because it has turned out to be beneficial to the estate, would practically dispense with the time-honored restraints and safeguards which equity has been so solicitous to maintain for the protection of trust estates. A relaxation of such restraints and guards would invite every trustee to employ the trust funds about as he pleased, and make his lawful authority dependent upon the outcome of his enterprise."

See, also, Cement Co. v. Jones, 8 Mo. App. 373; Woerner, Guardianship, §§ 57, 59, 142.

The demurrer must also be sustained upon the ground of improper joinder of causes of action, based upon services rendered at the request of the defendants, and for them and each of them, and for the firm of West Bros., and setting forth items of account against George F. West in private matters.    See Harris v. Elliott, 29 App. Div. 568, 51 N. Y. Supp. 1012.    Such an action as this was not authorized by the order, and it cannot be maintained.

In view of the averment that in January, 1892, and for a long time prior and subsequent thereto, the lunatic resided in Syracuse, and the other circumstances stated, it is very doubtful that he resided in Erie county in July, 1893, when the committee was appointed; and, if he did not, the county court had no jurisdiction to make the appointment.    Code Civ. Proc. § 340, subd. 4.    But it will be presumed that the court lawfully acquired jurisdiction.    Van Deusen v. Sweet, 51 N. Y. 378.    I suppose the county judge believed that the property of the lunatic in the county gave jurisdiction, but that is not true.

In conclusion, it should be remarked that there is no real necessity for the bringing of an action for the allowance of compensation for services rendered the committee, to be paid from the funds or property in the custody of the court, since there is an adequate remedy by summary application to the court.    The proper course is to cause the committee, by citation or otherwise, to file an inventory and to render an account, etc.    Brasher v. Van Cortlandt, 2 Johns. Ch. 242; In re Otis, 34 Hun, 542; Code Civ. Proc. § 2342.    And since there may be some distinct items of the plaintiff's account that may be meritorious, and entitled to the favorable consideration of the court upon an accounting of the committee, let the final judgment that may be entered upon the demurrer be without prejudice to an application to the county court for an allowance.    The court having control of the final settlement of the committee's accounts ought to have control of the expenditures.

It appears, therefore, that the remedy of the plaintiff is not such an action as this; and it follows that the interlocutory judgment in favor of the demurring defendant should be affirmed, with costs.    All concur.