In the Matter of the Judicial Settlement of the Account of THE NATIONAL BANK AND TRUST COMPANY OF NORWICH, as Executor, etc., of A. BERTSELL IRELAND, Deceased.

LENA M. WHITMORE, Appellant; FRANK L. IRELAND, Respondent.

Third Department, January 14, 1931.

*Keenan, Brink & Harrison* [*Neil G. Harrison* of counsel], for the appellant.

*Hubert L. Brown,* for the respondent.

*Irving D. Tillman,* for the executor.

VAN KIRK, P. J. The bequest of the preferred stock to Lena M. Whitmore was a specific legacy. (*Crawford* v. *McCarthy,* 159 N. Y. 514, 519.) This stock having been disposed of by the committee of the incompetent testator, Lena M. Whitmore claims the proceeds or the equivalent of the proceeds of that stock. The executor claims that such sale caused an ademption of the legacy and that appellant is entitled to no part of the proceeds thereof.

The general rule in this State is that a specific legacy is adeemed when the property, the subject of the specific bequest, is not in the estate at the time of death. Ademption is not dependent upon the testator's intent of adeeming. " What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change." (*Matter of Brann,* 219 N. Y. 263, 268.) This rule has been applied where the alienation is by operation of law. (*Ametrano* v. *Downs,* 170 N. Y. 388, 391.) That case involved the sale of real estate which had been specifically devised in condemnation proceedings during the life of the testatrix. The court said: " The only point to be considered, therefore, is whether a different rule obtains in the case of involuntary alienation, by operation of law, from that which prevails on a voluntary sale; " and held that a transfer by operation of law during the life of the testatrix caused ademption as does a voluntary transfer. The English rule is the same.

Our question is whether the committee of a testator, who has become incompetent after making his will, can, by a sale of the subject of a specific bequest, nullify that bequest and defeat the declared intention of the testator when there are other assets of the estate not specifically bequeathed sufficient to satisfy his needs.

It does not appear in this record that the committee was authorized by the court to sell this stock, but it does appear that he made his accounting and his account was approved. However, neither the court, nor the committee, was aware of the specific bequest, nor was this appellant or the executor a party to that accounting. Nothing indicates that, had the committee known of the specific bequest, he would have sold the preferred stock rather than the common stock.

When the committee was appointed the testator's property passed into the hands of the court to be administered by the com-

mittee as its agent. The committee had no title to the property. This property could be used for the incompetent's maintenance and needs, but what remained must be delivered to the executor. (32 C. J. 692, 693; Civ. Prac. Act, § 1377; *Kent* v. *West*, 33 App. Div. 112; appeal dismissed, 163 N. Y. 589.) Except for the needs of maintenance and payment of debts of the testator the disposition of the property, whether in the hands of the committee or of the executor, is controlled by the will as it stood at the time incompetency matured. The title to the specific legacy vested at the time of the death directly in the legatee and not in the executor. (*Matter of Columbia Trust Co.*, 186 App. Div. 377, 380; *Matter of Utica Trust & D. Co.*, 148 id. 525.) Also in this respect the will speaks as of the time of its execution. (*Matter of Delaney*, 133 App. Div. 409; affd., 196 N. Y. 530; *Matter of Campbell*, 170 id. 84, 87.) The general rule of construction is that the intention of the testator must be carried out where that intention is clearly expressed. When this testator became incompetent he had lost the power to form or express a changed intention. This preferred stock was then a part of his estate. By no act of his and by no operation of law to his knowledge was this preferred stock taken from his estate. When he was declared incompetent, for all purposes connected with his will he was a deceased person. Incompetency is as final as death in fixing intent. The intent disclosed in his will should prevail. A rule not necessarily applicable should not avail to defeat a valid will or revoke a bequest. To hold that this legacy was adeemed is to hold that the preferred stock may be used in disregard of the testamentary disposition by the testator and without the necessity of thereby providing for his use and maintenance. Under the rule that, in the order of payment, specific legacies are to be preferred to general legacies (*Matter of Matthews*, 122 App. Div. 605), the committee or the court which had appointed him should have used the other assets of the estate before selling this preferred stock. Had the bills contracted during incompetency remained unpaid until death (no committee having been appointed) they would have been paid by the executor from the property not specifically bequeathed, so far as such existed.

We do not find any decision in the Court of Appeals, or an Appellate Division, of this State on this question. Contrary to the rule in this State, in the Federal courts the test of intention of adeeming is applied, but still we find support for the above views in *Wilmerton* v. *Wilmerton* (176 Fed. 896; writ of certiorari denied, 217 U. S. 606). While the intention test is recognized, the court said (p. 900): " The question in our judgment is not whether, as a mere matter of accident, or of purpose outside of the testator's purpose, the

thing set apart as the corpus of a special bequest has been changed in specie. The real question is whether, all things considered, the testator's testamentary disposition did, or did not remain, with reference to the particular thing embodied in the specific bequest or its proceeds, the same as it was the last moment he was able to exercise a testamentary disposition. In that way, and in that way only, we think, can the right of the man to dispose of his property according to his own wishes, exempt from the interference, caprice or interest of others, be fully carried out. In that way only can his intention, as embodied in his will, be truly administered." In 30 American Law Reports, Annotated, page 676, is an annotation setting forth the rules, in various jurisdictions, on the question here presented. On page 680 the Scottish case of *Macfarlane* v. *Macfarlane* (1910 S. C. 325) is digested. As in the instant case, the testator became incompetent after making his will. It is held that the rule under Scottish law agrees with that of England; it does not recognize, as a test, the intention of the testator of adeeming a legacy. The *curator bonis* was not aware of the terms of the will. The court said that no act of a *curator bonis* can avail to affect the order of his ward's succession, or its character in the distribution of it between heir and executor, unless it can be shown not only that it was a proper and necessary act of administration on the part of the curator, but that it would have been a necessary and unavoidable act on the part of the ward if *sui juris*. And concludes: " Though the testator's estate at his death did not in fact include the shares in question, they must, in my judgment, be held to have formed part of it at that date [of incompetency] and that without in any degree impinging upon the well-established general rule of law, already alluded to, that a testator's intention is not to be looked to in a question of ademption." With like reasoning we think that this holding does not conflict with the holding in *Matter of Brann* (*supra*). In that case the will and codicil were construed and given effect. The court remarks that the testatrix had an opportunity to change the will when the codicil was signed, but did not. " Our duty is to give effect to it according to its terms." To cut down the terms of the will because of suspicion that the testatrix may have failed to appreciate its scope " is to break down the safeguards which the law throws around a will."

We hold that the specific legacy has not been adeemed. The committee of a testator, who has become incompetent and so remained till his death, for the purpose of procuring funds for the use and maintenance of a testator, may not sell the subject of a specific bequest when there are sufficient free assets of the

estate, not specifically given, to satisfy the needs of the testator; a specific bequest may not be so adeemed. The committee had not the power to change or disregard the will of the incompetent. A disposition of an incompetent person's property by a valid will is no more to be disregarded by his committee than by his executor. A testator's right to dispose of his property according to his own wishes, exempt from the interests of others, should be upheld.

The assets of the estate remaining for distribution, to the extent necessary to make good to the appellant the proceeds of the preferred stock sold by the committee, with interest, should be awarded to the appellant.

The decree, so far as appealed from, should be reversed, with costs to the appellant payable out of the estate, and the case remitted to the surrogate for further proceedings in accordance with this opinion.

All concur, except DAVIS, J., who dissents and votes for affirmance, with an opinion.

DAVIS, J. (dissenting). It is likely that in general a just result is reached in the decision to carry out the intent of the testator and give to the legatee an equivalent for the specific legacy which was not found in the assets of the estate. But the fixed rule of law in this State seems to prevent such a determination. " It is a rule which prevails without regard to the intention of the testator or the hardship of the case. * * * The law is too firmly settled to admit of relaxation, however peculiar or pressing the circumstances. The thing given is gone, and no court is at liberty to substitute a different thing for that which the testator had himself given." (*Beck* v. *McGillis*, 9 Barb. 35, 59.)

There are jurisdictions where in certain instances the ademption of a legacy is made to depend upon the question of intention. In this State the rule is to the contrary. Unlike revocation or satisfaction, ademption is not a question of intention, but is entirely a rule of law. The doctrine is that the one to whom a specific legacy is given can ordinarily take nothing thereby unless the legacy remains *in specie* at the death of the testator; and if in the latter's lifetime it has been destroyed, consumed, sold, exchanged or in any manner disposed of so that nothing remains in the estate to which the dispositive words of the will can be deemed applicable, it is lost. (*Abernethy* v. *Catlin*, 2 Dem. 341, 343.)

This rule was early established (*Walton* v. *Walton*, 7 Johns. Ch. 258) and has been consistently followed. (*Beck* v. *McGillis*, *supra;* *Ametrano* v. *Downs*, 170 N. Y. 388; *Matter of Brann*, 219 id. 263, 268.)

The same rule prevails in other jurisdictions. In England (*Slater* v. *Slater*, L. R. [1907] 1 Ch. 665; 1 Jarman Wills [7th ed.], p. 163); in the United States Supreme Court (*Kenaday* v. *Sinnott*, 179 U. S. 606, 617) and in Pennsylvania (*Blackstone* v. *Blackstone*, 3 Watts, 335, 338).

The question presented here is unusual, and the facts vary from those in the cases heretofore cited. There are authorities holding that ademption occurs under the circumstances here under consideration. Where the conservator of the property of an incompetent person has utilized, for the benefit of his ward, the specific property bequeathed, an ademption has followed as a rule of law. (*Matter of Freer*, L. R. 22 Ch. Div. 622; *Hoke* v. *Herman*, 21 Penn. St. 301.) There are authorities to the contrary in other jurisdictions, as has been pointed out in the prevailing opinion. (See, also, *Estate of Cooper*, 95 N. J. Eq. 210.)

We are then confronted with the problem as to whether the strong rule long prevailing in this State shall be modified and an exception made in a case where there could be no possible intention on the part of the testator to make a change, but the particular assets were sold by the committee for the entirely legal purpose of providing support and maintenance for an incompetent person. The restriction on the sale of property by the committee except by consent of the court relates only to real property. (Civ. Prac. Act, § 1377; *Matter of City of New York* [*Covert Ave.— Schmidt*], 136 App. Div. 887; *Maclay* v. *Equitable Life Assur. Society*, 152 U. S. 499, 503; 14 R. C. L. 574; 12 id. 1124.) The committee was as capable of forming an intent as to what personal property should be sold for the support of the incompetent as the testator would have been had he remained of sound mind and found it necessary to sell property to maintain himself. It is always contemplated that an incompetent person may be restored to reason and his property may be returned to him (Civ. Prac. Act, § 1382); and that he might again become competent to change his will. In the meantime the acts of the committee in good faith are the acts of the incompetent.

But I think this discussion is beside the question, if we follow the rule that we will look only to " the fact of change." Having ascertained that there has been change and disappearance of the specific property bequeathed, it is unnecessary to consider " the reason for the change." (*Matter of Brann, supra*, 268.) It seems to me that it matters not whether the property was disposed of in one way or another — whether by legal means or otherwise. The test is whether the property specifically bequeathed is found in the assets of the estate. If it becomes destroyed by use, fire

or other cause; if it is taken under legal process, by theft or otherwise; if it is sold or exchanged by the committee of an incompetent for the maintenance of his ward — there is as effective ademption of the legacy under the rule in this State as though the specific property had been disposed of by the intentional act of the testator.

Evidently the will was drawn by a lawyer. Acting under legal advice, the testator could have made certain that the object of his bounty would receive a legacy by making it general instead of specific. Having failed to do that, he took the risk of ademption. My view of the doctrine in this State is, that the courts are not authorized to substitute something else in lieu of the legacy — no matter what fine distinctions may be made and what subtle reasoning employed to bring about a seemingly just result.

I favor affirmance.

Decree, so far as appealed from, reversed on the law, with costs to the appellant payable out of the estate, and matter remitted to Surrogate's Court for further proceedings in accordance with the opinion.