In the Matter of the Accounting of Stacy D. Behe, as Committee of the Person and Property of Celia M. Kyle, an Incompetent, Respondent. Celia M. Kyle, Appellant.

Fourth Department, January 16, 1953.

*Salem G. Mansour* for appellant.

*J. F. Henry De Lange* for respondent.

TAYLOR, P. J.   We are called upon to review the orders of the Official Referee which judicially settled the final account of Stacy D. Behe, former committee of the person and property of Celia M. Kyle, a former incompetent, insofar as said orders dismissed objections filed to said account and insofar as the order of August 1, 1952, fixed and allowed commissions, special allowances and counsel fees out of the former incompetent's estate.

The facts are relatively simple.   The appellant Celia M. Kyle who is now eighty years of age and Clyde Kyle, a man now seventy-three years of age were married on January 15, 1927. The couple lived in the village of Youngstown, New York, from the time of their marriage to January 1, 1930, at which time they moved to what has been termed in the record the '' homestead farm '' which Mrs. Kyle inherited from her parents.   This farm consisted of 140 acres.   In 1929, Mrs. Kyle built a house on the homestead farm at a cost of $23,700.

In addition to the 140-acre homestead farm, there was also a small piece of land consisting of 71 acres which Celia Kyle had title to prior to her marriage.   She caused this parcel of land to be transferred so that the ownership to it was vested in the Kyles as tenants by the entirety.

Adjoining the homestead farm, the Kyles, as tenants by the entirety, purchased a parcel of land consisting of 45 acres which was worked in conjunction with the homestead farm.   Following this purchase we find Mrs. Kyle owning outright 140 acres of land and a joint interest with her husband of 116 acres of land.

Throughout the period prior to appellant's commitment the husband seemed to treat all property owned by the wife as community property, which we feel explains in part the basis for the various claims asserted by him to his wife's property. Typical of that attitude is his answer to the Referee's question

as to who built the house. His reply was: " It was her money of course. *We called everything ours, that is all there was to it. We always worked together.*" (Emphasis supplied.) When asked what buildings were on the farm, he replied: " Well, there is a house that cost *us* $23,700 ". (Emphasis supplied.) Similar expressions are to be found throughout the record. The Kyles continued to live together on the homestead farm until she was committed to Brigham Hall in the month of November, 1948. During that period the parties lived together happily, Mr. Kyle managed the farms and brought them to a state of high productivity and a corresponding increase in income. The wife was appreciative. She placed some of her property in their joint names and also made transfers of real estate and money to her husband. In March, 1949, following her commitment to Brigham Hall, she returned to Niagara Falls and lived for a short time with some relative and then went to live with a Mr. and Mrs. Nelson at Youngstown and finally moved back to her home on the farm. On May 19, 1949, Stacy D. Behe was appointed committee of Celia M. Kyle and acted in that capacity until May 17, 1951, when appellant was declared competent. The committee was thereupon discharged by the Niagara County Court and directed to file his final account. Objections were filed to the account and the issues raised by the account and objections thereto were, by stipulation of the parties, referred to Hon. Samuel J. Harris, Offiicial Referee, to hear and determine. The Referee found that the committee in the conduct of the affairs of the incompetent did not fall short of those high standards required of a committee of an incompetent. We reach a different conclusion, it being our feeling that the committee was derelict in the respects hereinafter pointed out.

By order dated May 16, 1952, the final account of the committee was settled and allowed as filed except for a stipulated surcharge of $183.45. In addition the order provided that petitioner be permitted to make application for commissions and other expenses incurred including legal expenses. Upon a further hearing a statutory allowance of $552.24 was granted to the committee together with an additional allowance of $200, also an allowance of $250 for services as committee of the person of said Celia M. Kyle. Legal fees in the sum of $650 were allowed to counsel for the committee for services rendered in connection with the accounting proceeding.

One of the objections filed to the account concerns certain money found in a deposit box by the committee Behe in a bank

at Lockport, New York. There is no dispute about the fact that $8,080 was found in said box and further that the said box was in the individual name of Celia M. Kyle. The committee, in the first instance, deposited money in his account as committee. However, he only charges himself with $4,080 instead of the $8,080. The committee makes this explanation: Prior to Kyle's marriage to the incompetent, she held a mortgage on certain property on Saxon Street in the city of Lockport, New York. The mortgagors defaulted, and in lieu of foreclosure the owner mortgagors at Mrs. Kyle's request deeded the premises to Clyde Kyle. Subsequently and in the year 1934, the premises were sold and the proceeds therefrom amounting to $2,800 were placed in the safe deposit box standing in the name of the incompetent. There is also testimony upon which Kyle claims he added $1,200 to the $2,800 which was money given him by the incompetent from the farm income. These sums totaling $4,000 were claimed by Kyle and shortly after the appointment of the committee, the committee turned over to Kyle that sum of money. He did not, however, disclose such payment in his annual accounts nor did he disclose having received $8,080 cash from the safe deposit box until filing of his final account. In the face of such disclosure he charges himself with the receipt of only $4,080 from the safe deposit box. The committee never filed an inventory of the box as required by section 1377-a of the Civil Practice Act. His excuse is that the inventory was either mislaid or lost.

How the funds found their way into the deposit box and to whom they belonged is unimportant in this proceeding for accounting. The committee is charged with the duty to inventory the assets of his ward and to conserve them during his appointment. The fact that the box was in the incompetent's name and no other is all that was necessary for the committee to know. The contents will be presumed to belong to the owner of the box. In this proceeding, we are not interested in title to the contents of the box. What we are interested in, was the committee derelict in disposing of a substantial part of the contents of the incompetent's box without approval of the court and notice to the incompetent? The committee should charge himself with $8,080, the amount of cash found in the box. In the absence of such showing, his account should be surcharged for the difference.

The law is well settled that the jurisdiction of property of an incompetent vests in the court and not in the committee, the

committee being merely an agent or custodian for the court to take physical charge of the estate and property. The incompetent is not divested of any property rights or legal title to his estate by the appointment of his committee. Nothing is taken from him except control and management of his estate. (*Kent v. West,* 33 App. Div. 112, appeal dismissed 163 N. Y. 589; *Forbell* v. *Denton,* 53 App. Div. 402; *Carter* v. *Beckwith,* 128 N. Y. 312, 316; *Matter of Warren,* 207 App. Div. 793; *Matter of Ireland,* 231 App. Div. 288, 291.) '' The legal title to the property in question remained in the incompetent person, notwithstanding the appointment of the committee. Such committee was merely the custodian, or bailiff of the property and had no interest therein or independent power to dispose of the same in any manner whatever. It was his duty to preserve the property and not to dispose of it, except by order of the court.'' (*Scribner* v. *Young,* 111 App. Div. 814, 815–816.)

The next objection involves the purchase of a new tractor by Kyle with money he withdrew from a bank account standing in his name individually at the time of withdrawal. This account was formerly a joint account with his wife. But prior to the proceedings declaring her incompetent, and while she was either at Brigham Hall or back in Youngstown on parole, Kyle had her name stricken from the account. The record indicates that the change was made on May 10, 1949, ten days prior to Behe's appointment as her committee. It is significant that the $1,000 owing on the tractor was paid on the very date of Behe's appointment, May 19, 1949. What the appellant is here concerned about is not the actual payment for the tractor out of the bank accounts which he had transferred to his own name but the fact that the committee credits himself with $1,000 on the account.

The account being in their joint names, the husband had equal right of withdrawal. He did so to the extent of the entire balance on deposit, at a time when he well knew his wife to be mentally ill. The husband is in no position to disclaim knowledge of those facts for it was upon his petition that the wife was declared incompetent.

This proceeding is not brought to determine the title to funds but rather to determine whether the committee was derelict in his duty and to determine what property rightfully should be returned to the incompetent. No order of the court was obtained authorizing the payment. We think a surcharge is in order.

Another objection is predicated on the failure of the committee to seek reimbursement from the husband of the incompetent for legal and medical expenses paid out of the incompetent's estate in the proceeding brought by the husband to have her declared incompetent. The amount involved is $1,327.57. The items making up this sum were paid pursuant to an order of the Niagara County Court dated May 19, 1949. Authority for such order is section 1373 of the Civil Practice Act.

The action of the Official Referee in denying any surcharge for expenses arising out of the proceeding for commitment prior to her adjudication as an incompetent should be sustained.

In addition to the items above discussed which appellant claims should be surcharged against the committee, appellant urges that the Referee erred in allowing counsel fees upon the final accounting, commissions, etc. Where, as in this instance, the committee has been derelict in the performance of his duties, we believe the rule applicable to the payment of commissions to be '' The committee is entitled to commissions as prescribed by law upon the property of the incompetent, deducting therefrom, however, the * * *, amount with which the committee is surcharged and upon which he is not entitled to commissions '' (*Matter of Lawrence,* 138 Misc. 238, 240).

We also feel that such derelictions on the part of the committee foreclose him from asserting his right to attorney's fees. Such denial is without prejudice to any remedy the attorney may have against respondent.

The orders insofar as appealed from should be modified on the law and facts in accordance with this opinion and as modified affirmed, without costs of this appeal to any party and the matter should be remitted to the Niagara County Court for further proceedings in accordance with this opinion.

VAUGHAN and PIPER, JJ. (concurring). We agree with the majority opinion surcharging the committee with the amount of $4,000 found in the safe deposit box and the sum of $1,000 allowed as a credit to the committee for the purchase of a tractor and insofar as it denies commissions and legal fees. We also agree that the committee was not subject to surcharge for expenses in the proceeding to declare Mrs. Kyle incompetent. We feel however that the committee should be surcharged in the further amounts herein set forth.

The committee following his appointment, without authorization from the court, retained Mr. Kyle to operate the combined

farm properties. Out of this operation the appellant objects to certain items.

The committee takes a credit of $3,174.80 for farm labor in the year 1949, and in 1950 the committee takes credit for $3,335.75 for farm labor. Produced at the hearing were certain time books which were supposed to reflect a true picture of the labor hired in the operation of the farm, exclusive of the regular hired man who received $80 per month.

The committee was acting in a fiduciary capacity and was bound by law to make only those expenditures which he could substantiate on the accounting to his ward. Kyle was Behe's agent during the two years the committee acted and if he chooses to accept his agent's figures his trust in no way binds his ward. Kyle testified that he had no receipts or verifications for the amounts which were entered in his time book for wages paid to casual employees and that he took no receipts covering such payments. It is undoubtedly true that it is not customary to take receipts for wages from itinerant farm help, but that rule does not obtain here where the farm is being operated under committeeship.

Subdivision 2 of section 1381 of the Civil Practice Act sets forth what must be presented on a final accounting by a committee: '' The account to be filed * * * shall be verified and contain * * * an itemized statement of the receipts and disbursements * * * .'' The section also directs that a summary statement shall be included in the final account and all vouchers shall be filed therewith. It would seem that under this section the committee should be surcharged unless he can substantiate the disbursements which he has grouped together for labor hired during the years 1949 and 1950. While we must assume that expenditures for labor were an annual occurrence prior to the time Mrs. Kyle was declared incompetent, in order to justify his position the committee should have shown that fact on the hearing, the burden being upon the committee to show all expenditures and receipts, and in this case having failed, he should be surcharged for the amount shown.

The next objection that calls for consideration involves failure on the part of the committee to obtain reimbursement from the incompetent's husband for necessaries and maintenance during her incompetency. That the objection is well taken finds support in the case of *Manufacturers Trust Co.* v. *Gray* (278 N. Y. 380, 387). '' Though it appears that before she was adjudicated an incompetent and almost from the date of the separation, the wife was a patient in hospitals for those suffering from mental

or nervous disturbance, yet there is no evidence that she was actually incompetent until the date when the incompetency was adjudicated. Until that time she was free to use her own money for her support, if she so chose, rather than to look to her husband for support. After a committee of her estate was appointed, she was no longer free to exercise such choice. The primary obligation to pay for her support rested upon the defendant, her husband. The committee was bound to see that the incompetent received support. It might use the moneys in the incompetent's estate to pay for the incompetent's expenses in the State hospital in accordance with the directions of the court, if the husband, primarily liable, failed to provide support; but it had no right to use the money of the incompetent to relieve the defendant from his obligation. The law implies a promise by the defendant to repay the amount which the committee was *compelled* to pay because the defendant failed to meet his obligation.''

Other cases cited by both appellant and respondent deal with section 80 of the Mental Hygiene Law. In the case of *Matter of Fox* (250 App. Div. 31) the husband's liability for support and maintenance of his wife during her incompetency was conditional upon his financial ability to pay. This point is not raised by the committee so it can therefore be presumed that Kyle was of sufficient financial ability to so provide for his incompetent wife. The record discloses that he had two checking accounts in his own name and a savings account of $6,000. We are of the opinion that a surcharge for this item is in order. The items which go to make up this surcharge amount to $3,116.73.

For the reasons above stated, we feel that the committee should be additionally surcharged in the amounts above set forth.

All concur, except VAUGHAN and PIPER, JJ., who concur as to the modification in the majority opinion but dissent and vote to surcharge the committee as to items raised by other objections, in a separate opinion. Present — TAYLOR, P. J., McCURN, VAUGHAN, PIPER and WHEELER, JJ.

Orders insofar as appealed from modified on the law and facts in accordance with the opinion and as modified affirmed, without costs of this appeal to any party and matter remitted to the Niagara County Court for further proceedings in accordance with the opinion. Certain findings of fact disapproved and reversed and new findings made.